NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ERNEST JEAN-LOUIS, et al, | : | **Hon. Dennis M. Cavanaugh** |
| Plaintiffs, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | Civil Action No. 06-03972 (DMC)(JAD) |
| MICHAEL CLIFFORD, et al, | : | |
| Defendants. | : | |
| | : | |
| | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon Defendants' Detective Michael Clifford, Sergeant Glen Szenzenstein, Trooper Robert Crutchley, Trooper Brian DeAngelo, Trooper John Eustace, Trooper Christian Dreyer, Trooper Kevin Walsh, Trooper Christopher Fowler, Trooper Douglas Lemnowicz, and the New Jersey State Police (collectively "Defendants") Motion for Summary Judgment pursuant to FED. R. CIV. P.56(c). Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendants' Motion for Summary Judgment is **granted**.

I.    **BACKGROUND**[1]

On August 23, 2005, a search warrant allowing for the search of 27 Crawford Street, East

---

[1] The facts set-forth in this Opinion are taken from the Parties' statements in their respective moving papers, and primarily from the Plaintiffs' response to the Statement of Undisputed Material Facts. As this case comes before this Court on a Motion for Summary Judgment, the facts will be construed in the light most favorable of the non-moving party. Accordingly, for purposes of this summary judgment motion, this Court will analyze the claims under the facts as pled by Plaintiffs.

Orange, New Jersey was mistakenly executed on Plaintiffs' residence at 27 Smith Street, Newark, New Jersey.  The warrant was executed pursuant to an investigation of a drug trafficking organization which was conducted in coordination with various state and federal bodies, namely the Drug Enforcement Administration ("DEA"), the Bureau of Immigration and Customs Enforcement, the Division of Criminal Justice, the South Orange Police Department, the Maplewood Police Department and the Orange Police Department.

The investigation pursuant to which the warrant was executed was code named "Operation Cool Runnings." This investigation was initiated in December of 2004 and ultimately led to the targeting of the criminal activities of a drug trafficking organization.  Pursuant to the investigation, numerous wiretap interceptions were initiated for numerous wireless telephone facilities.  On August 23, 2005 a search warrant was signed by the Honorable Robert Longhi, Middlesex County Superior Court Judge to authorize the search of 27 Crawford Street, East Orange, New Jersey.[2]  At the request of DSG Ronald Hampton of the New Jersey State Police Gang, the State Police Central T.E.A.M.S. Unit was asked to assist with the execution of the warrant.[3]  The T.E.A.M.S. Unit did not participate in any surveillance of the property in question,

---

[2]Plaintiffs do not dispute that the warrant was signed, but do dispute that the warrant was signed prior to its execution.  However, the investigative time line drafted by DSG Ronald Hampton, provides extensive detail regarding the circumstances under which the warrant was executed and specifically provides that the warrant in question was signed at 11:05 a.m. on August 23, 2011. (Def.'s Mot. Summ. J., Ex. B, ECF No. 81-4).  Plaintiffs have not provided any evidence to support a theory that the warrant was signed at any time other than that indicated.  Rather, Plaintiffs contend that the officers who executed the warrant did not view nor have the warrant in their possession at the time of execution.  Such allegations are insufficient to raise a question of material fact that the warrant was not signed prior to its execution.

[3]Defendants Szenzenstein, Crutchley, DeAngelo, Eustace, Dryer, Walsh, and Fowler were all members of the T.E.A.M.S. Unit on the day of the operation.

with all surveillance previously conducted by the DEA agents.[4]  Rather, the T.E.A.M.S. Unit was

enlisted for the purpose of executing the "entry" of the residence, and upon completion would

return and be assigned to their next location.

Defendant Detective Clifford, who was not initially assigned to the subject location, was

notified at approximately 2:00 p.m. on August 23, 2005 that he had been assigned to execute the

warrant at 23 Crawford Street.  Detective Clifford did not travel with the other members of the

team to the location in question as he was transporting a large amount of cash seized from the

execution of an earlier warrant and had to travel on his own.  Detective Clifford was directed to

the location by Federal Special Agent Andrew Pachman, who was with him at the time.  Upon

arrival at the location believed to be 27 Crawford Street, Special Agent Pachtman indicated to the

T.E.A.M.S. members and Detective Clifford where the search was to be executed.  The location

indicated by Agent Pachtman was not 27 Crawford Street, East Orange, New Jersey, but was

rather 27 Smith Street, Newark, New Jersey.[5]

At approximately 2:14 p.m. on Tuesday August 23, 2005, Defendants forcibly entered the

building by breaching the first floor door.  The Defendants were wearing unmarked black

uniforms, black masks, and black helmets and carrying automatic weapons.  Upon entering, the

residents of the first floor apartments were told to remain inside their apartments.  The

---

[4]While Plaintiffs contend that Defendants' failure to conduct surveillance was a violation
of official procedures, they do not dispute that Defendants were not involved in the surveillance
leading up to the execution of the warrant.  The record indicates that the Federal officers had
been conducting surveillance on the premises for two weeks prior to the execution of the warrant.

[5]The special report drafted by SFC J. Algor #4594 which details the mistaken execution
of the warrant explains that Crawford Street East Orange turns directly into Smith Street,
Newark.

Defendants then made entry into the two second floor apartments of the building by breaching the respective doors, and according to Plaintiffs ordered Plaintiffs at gunpoint to "get on the fucking floor," and proceeded to search Plaintiffs' residence, overturning furniture, damaging personal and real property, desecrating worship areas, and ransacking bedrooms and living rooms. Two black males were brought into the livingroom of the first residence by Defendant Trooper Brian DeAngelo. Plaintiffs were not handcuffed but contend that they were held at gunpoint the entire time despite the fact that they they never offered resistance nor refused to comply with Defendants' commands. Plaintiff David Jean-Louis alleges, and Ernest Jean-Louis corroborates, that he was hit with the "butt" of one of Defendants' guns in order to push him down on to the couch while the Defendants executed the search warrant. The search ceased after approximately twenty to thirty minutes with Defendants finding no drugs, illegal weapons, or other contraband in Plaintiffs' home.[6] Defendants subsequently realized that they had entered the wrong location, at which time they left the premises.

Property damage that resulted from the incident at 27 Smith Street, Newark, New Jersey was paid in the amount of $8,000 to Denroy Bell. Plaintiffs maintain that Defendants failed to properly repair and fix the damages done to the property and that Plaintiff Cedelie Pompee had to hire another person and incur an expense of $1200 in order to properly fix the damage.

On August 21, 2006, Plaintiffs filed a Complaint in this Court, raising several constitutional and other claims arising from the events that transpired on August 23, 2005.

---

[6]Defendants maintain that the T.E.A.M.S. Unit was only in the building for about 4 to 5 minutes from the time the front door was breached until it was realized that the wrong location had been entered. For purposes of this Motion for Summary Judgment, this Court construes the facts in Plaintiffs' favor and accordingly adopt their assertion that the duration of Defendants' stay was approximately 20 to 30 minutes.

Plaintiffs have amended their Complaint on several occasions, with the final Amended Complaint being submitted to this Court on September 20, 2008.  The State Police Officers and New Jersey State Police now move to dismiss the Amended Complaint as it applies to them.

The State Defendants move for summary judgment on the following grounds: (1) the federal claims against the New Jersey State Police and the State Troopers in their official capacity should be dismissed as barred by the Eleventh Amendment and are not subject to liability under 42 U.S.C. § 1983; (2) Plaintiffs' first claim of relief fails to state a cognizable claim under 42 U.S.C. § 1985; (3) the facts alleged do not support the necessary elements of Plaintiff David Jean-Louis' claim of assault and battery and/or excessive force; (4) the facts alleged do not support Plaintiffs' claims of false imprisonment and unreasonable search and seizure; (5) the Individual State Defendants are entitled to qualified immunity for Plaintiffs' claims brought pursuant to 42 U.S.C. § 1983; (6) Plaintiffs' Aneze Jean-Louis and Celelie Pompee's Loss of Consortium claims are not legally cognizable; (7) all claims against the New Jersey State Police must be dismissed because it is a public entity which may not be held liable under the theory of respondeat superior; and (8) the alleged use of degrading and insulting language during the execution of the search warrant fail to adequately plead a constitutional violation under 42 U.S.C. § 1983.[7]

## II.   STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material

---

[7]Plaintiffs provide in their responsive papers that they are not seeking relief under 42 U.S.C. § 1985 and have not made a claim regarding the use of degrading and insulting language during the execution of the search warrant.  (Pl.'s Opp. Summ. J., pp. 11, 21, ECF No. 84).  Accordingly, the Court will not address the arguments advanced by Defendants regarding these claims.

fact and that the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); Celotex

Corp. v. Catrett, 477 U.S. 317, 330 (1986).  The moving party bears the burden of showing either

(1) there is no genuine issue of fact and it must prevail as a matter of law; or (2) that the non-moving

party has not shown facts relating to an essential element of an issue for which he bears the burden.

Celotex, 477 U.S. at 331.  If either showing is made then the burden shifts to the non-moving party,

who must demonstrate facts that support each element for which he bears the burden, as well as the

existence of genuine issues of material fact.  Id.  A material fact is one that might affect the outcome

of the case, and "summary judgment will not lie if the dispute about a material fact is 'genuine', that

is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court will consider all facts and their reasonable inferences in the light most favorable

to the non-moving party.  See Penn. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995);

Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J.

2000), aff'd, 51 Fed. App'x. 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J.

1980))While a court must draw reasonable inferences in the light most favorable to the non-moving

party, the non-moving party "may not rest upon the mere allegations or denials of his pleading" to

satisfy this burden, and rather must produce sufficient evidence to support a jury verdict in his favor.

See FED. R. CIV. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

586 (1986).  "[U]nsupported allegations in memorandum and pleadings are insufficient to repel

summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990), and

conclusory allegations are insufficient to establish genuine issues of fact.  Lujan v. Nat'l Wildlife

Fed'n, 497 U.S. 871, 902 (1990).  The non-moving party "must do more than simply show that there

6

is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., 475 U.S. at 586.

**III.**    **DISCUSSION**

    A.    Claims Against the State and Police Officers in their Official Capacity

    Plaintiffs' claims against the State Police and the State Police Officers in their official capacity must be dismissed as barred by the Eleventh Amendment.  It is well established that, under the principles of sovereign immunity, State agencies and State officers acting in their official capacity cannot be sued for damages pursuant to § 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1988)(dismissing claims against the Michigan Department of State Police and the Michigan Director of State Police in his official capacity); see also Brandon v. Holt, 469 U.S. 464, 471 (1985).  The Eleventh Amendment poses an absolute bar to the filing of suits against the State, with two narrow exceptions, neither of which apply to the present dispute.  First, it has long been recognized that a State can waive its immunity from suit and consent to suit against it in federal court, so long as that consent is unequivocally expressed.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 (1984). Second, Congress may exercise its power under section 5 of the Fourteenth Amendment to override a State's immunity. Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976).  However, the Supreme Court has required an "unequivocal expression of congressional intent to overturn the constitutionally guaranteed immunity of the several states." See Pennhurst, 465 U.S. at 99, citing Quern v. Jordan, 440 U.S. 332, 342 (1979).

    The Supreme Court of the United States has found that Congress did not intend to override State sovereign immunity with the passage of § 1983. Quern v. Jordan, 440 U.S. at 341. Accordingly, § 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." Will, 491 U.S. at  66.

Plaintiffs seek to avoid summary judgment pursuant to the Eleventh Amendment by asserting that their theory of relief falls under the Fourth and Fourteenth Amendments, and seek to invoke the recognized exception to sovereign immunity for claims that fall under the Fourteenth Amendment. While Plaintiffs are correct that under some circumstances Congress may abrogate a state's sovereign immunity pursuant to its §5 powers, it has already been noted that the Supreme Court has specifically found that Congress failed to do so in passing § 1983.

Therefore, because the State Defendants have not waived their Eleventh Amendment immunity, and Congress has not abrogated such immunity under § 1983 pursuant to which Plaintiffs' claims are raised, Plaintiffs' claims are barred as stated against the State Defendants.

B.      Plaintiffs' Fourth and Fourteenth Amendment Claims under 42 U.S.C. § 1983

Plaintiffs raise claims against the Defendants in their individual capacity under 42 U.S.C. § 1983 for excessive force in the assault and battery of David Jean-Louis, as well as false arrest, false imprisonment, and unreasonable search and seizure, all in violation of Plaintiffs' Fourth and Fourteenth Amendment Rights.  To state a claim under 42 U.S.C. § 1983, a Plaintiff must show that persons acting under the color of state law violated one or more of Plaintiff's constitutionally protected rights.  Claims of excessive force, false arrest, false imprisonment, and unreasonable search and seizure all constitute violations of the Fourth Amendment right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and are all actionable under § 1983.  Groman v. Twp. of Manalapan, 47 F.3d 628, 634-36 (3d Cir. 1995).

This Court first addresses the claims of the Plaintiffs who were present in the apartments searched at the time of the execution.  Plaintiff David Jean-Louis alleges that an assault and battery were intentionally committed on him during the course of the incident and that such assault and

8

battery constituted an excessive use of force in violation of his Fourth Amendment rights. Defendants concede for the purposes of this Motion for Summary Judgment that Plaintiff David Jean-Louis was "hit with the butt of a gun a couple times," and stipulate that it was done by Trooper Brian DeAngelo upon the stipulation that he was the only Defendant who entered David's apartment that day.

Claims of excessive force brought pursuant to § 1983 are properly analyzed under the Fourth Amendment's "objective reasonableness" standard. Speaks v. City of Philadelphia, 1996 U.S. Dist. LEXIS 19071, at *14-15, (Dec. 17, 1996) citing Graham v. Connor, 490 U.S. 386, 395 (1989); see also Couden v. Duffy, 446 F.3d 483, 496 (3d Cir. 2006)(*reversed on other grounds*). A determination of objective reasonableness is not determined in hindsight and rather considers the facts and circumstances confronting the individual officer on the scene. See Graham, 490 U.S. at 396. To determine the objective reasonableness of the officer's conduct, a court must consider the following factors: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officer and others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. Couden, 446 F.3d at 496-97, citing Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004). Other factors to consider include, "the possibility that the persons subject to police action are themselves violent or dangerous, the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, [ ] the number of persons with whom the police officers must contend at one time," as well as whether 'the physical force applied was of such an extent as to lead to injury." Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997). The Supreme Court has also noted that the reasonableness of a police officer's conduct should be considered in light of the fact that

9

"[t]he risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." Michigan v. Summer, 452 U.S. 692, 702-03 (1981). Further, the Supreme Court has instructed that Courts should be mindful that "not every push or shove, even if it may seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham, 490 U.S. at 396, citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)(internal citations omitted).

Accordingly, to state a claim for excessive force in the instant case, it must be established that the degree of alleged force employed by the Officer, under the totality of the circumstances and in consideration of the facts and circumstances known to the officer at the time the force was employed, was clearly unreasonable. See Speaks, 1996 U.S. Dist. LEXIS 19071, at *8 (granting summary judgment on claim of excessive force when police broke down door without knocking, pointed guns at the Plaintiffs, searched the premises for an extended period of time, and would not allow Plaintiff to get dressed while they searched the home).  Of particular note to the instant matter is the case of Mellott v. Heemer, in which the Third Circuit confronted a claim of excessive force when officers, in execution of an eviction, pointed loaded guns at Plaintiffs, pushed one Plaintiff into a chair on two occasions, and allegedly led another at gunpoint into a potentially dangerous situation. 161 F.3d 117, 123 (3d Cir. 1998). There, as here, there was no evidence of resistance during the course of the encounter, but the officers were aware that there was the potential for significant armed confrontation. Id.  There, the Court found that Plaintiffs had failed to establish a claim of excessive force, as, in light of the potential for threatening behavior, the uncertainty of the situation confronting the marshals during the eviction, and the lack of any physical injury to the Plaintiffs, the force employed was objectively reasonable at the time. Id.

Here, it is undisputed that at the time the alleged force was employed, the officers did not know that they were in the wrong location, but rather believed they were executing a warrant on a location that was implicated in a drug trafficking investigation.  Under such circumstances, it is not unreasonable that the officers might expect the occupants of the premises to be armed or to attempt to flee.  It was therefore reasonable for the officers to fear that their safety was in jeopardy and have their weapons drawn and utilize some degree of force to secure the premises and its occupants while the search was ongoing.  Such alleged behavior is consistent with a reasonable officer's attempt to "exercise unquestioned command over the situation" under the circumstances.  Therefore, under Third Circuit precedent, the force employed as alleged by the Plaintiffs was not sufficient to maintain a cause of action of excessive force.

Plaintiffs further raise claims of false arrest and false imprisonment that resulted when Defendants restrained their movement during the execution of the search.  Plaintiffs maintain that the restraints employed by Defendants were such that Plaintiffs were not free to leave.  Plaintiffs further allege that the degree of restraints imposed were unreasonable under the circumstances, and as a result they were effectively arrested and imprisoned without probable cause.

A false arrest is "the constraint of the person without legal justification." Ramirez v. United States, 998 F.Supp. 425, 434 (D.N.J. 1998).  To state a Fourth Amendment claim for false arrest, a Plaintiff must allege two elements: (1) that there was an arrest; and (2) that the arrest was made without probable cause. See Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988). A finding of false arrest under § 1983 will also give rise to a claim of false imprisonment under § 1983 for any detention that resulted pursuant to that arrest. See Groman v. Twp. of Manalapan, 47 F.3d at 636, citing Thomas v. Kipperman, 846 F.2d 1009, 1011 (5th Cir. 1988); see also Hines v. Whalen,

11

2011 U.S. Dist. LEXIS 129491, at *17 n. 4 (D.N.J.  Nov. 7, 2011)(holding that while a claim of false imprisonment under § 1983 is based on the Fourteenth Amendment protection against deprivations of liberty without due process of law, such claim is derivative of a Fourth Amendment violation for arrest without probable cause).   Accordingly, the crucial elements that Plaintiffs must establish to survive summary judgment on their claims of false arrest and false imprisonment are whether the restraints imposed by Defendants were such that an arrest occurred, and that such arrest was made without probable cause.

Here, the facts as alleged by Plaintiffs do not support the conclusion that an arrest occurred. Plaintiffs movements were restrained solely during the course of the search, and there is no allegation that Plaintiffs were held for a longer period than it took to execute the search.   It has already been established that under the circumstances it was necessary for the executing officers to secure the location and the individuals in it.  Accordingly, the detention of the occupants was only that necessary to effectuate the search.  While Plaintiffs maintain that it was unreasonable for the police officers to execute the search warrant on the wrong location, and further that it was unreasonable for officers to restrain Plaintiffs with their hands raised for the duration of the search, this Court finds that the facts within the knowledge of the executing officers rendered such restraints within reason for the purpose of effectuating the search.  Having failed to demonstrate that an arrest has been made, Plaintiffs' claims of false arrest and false imprisonment must fail.

Even if this Court were to find that Plaintiffs had successfully alleged constitutional violations in their claims of excessive force, false imprisonment, and false arrest, Plaintiffs would still have to overcome Defendants' assertion of qualified immunity to survive summary judgment.

For purposes of a summary judgment motion, "Defendants are entitled to qualified immunity

only if the Court can conclude, based on the undisputed facts in the record, that Defendants reasonably, though perhaps mistakenly, believed that their conduct was lawful in light of the clearly established law and the information known to them at the time of the alleged constitutional violation." Mantz v. Cain, 239 F.Supp.2d 486, 496 (D.N.J. 2002). Therefore, to overcome a defense of qualified immunity, it must also be shown that the constitutional violation was such that "it would have been clear to a reasonable officer that the conduct was unlawful in the situation confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), citing Wilson v. Layne, 526 U.S. 603, 615 (1999); see also Anderson v. Creighton, 483 U.S. 635, 641 (1987)(finding qualified immunity exists where a reasonable officer could have believed the arrest to be lawful, in light of clearly established law and the information the arresting officers possessed).

While the Supreme Court "has repeatedly stressed the importance of resolving immunity questions at the earliest possible stages of litigation," the Third Circuit has observed that this imperative is frequently "in tension with the reality that factual disputes often need to be resolved before determining whether the defendant's conduct violated a clearly established constitutional right." Curley v. Klem, 198 F.3d 271, 277 (3d Cir. 2002). Accordingly, summary judgment will not be issued on the grounds of qualified immunity where disputed facts material to the objective reasonableness of an officer's conduct remain. Id. at 278, citing Sharrar, 128 F.3d at 828; Karnes v. Skrutski, 62 F.3d 485, 499 (3d Cir. 1995). Such disputed facts will give rise to a jury issue and summary judgment will not be appropriate. Id.

When the doctrine of qualified immunity is raised on a motion for summary judgment in defense of alleged deprivations of constitutional rights under § 1983, the Court's analysis must begin with the threshold question of whether "the facts alleged, viewed in the light more favorable to the

13

party asserting the injury, show that the officers conduct violated a constitutional right." <u>Curley,</u> 298 F.3d at 277; <u>Mantz</u>, 239 F.Supp.2d at 496.  If the Plaintiff fails to allege the violation of a constitutional right, no further inquiry is necessary. <u>Id.</u>  If, however, the facts alleged are sufficient to demonstrate a constitutional violation, the court must proceed to determine whether the right asserted was 'clearly established' at the time of the officer's allegedly unlawful conduct." <u>Id.</u>  Such analysis requires the Court to consider "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Mantz</u>, 239 F.Supp.2d at 496, citing <u>Saucier v. Katz</u>, 533 U.S. at 194.

Here, while this Court has already resolved that Plaintiffs have failed to demonstrate the existence of a constitutional violation, even if a constitutional violation were present the record reveals that Defendants would nevertheless be entitled to qualified immunity.  Plaintiffs point to several factual allegations in support of their proposition that Defendants' actions did not constitute a reasonable mistake.  First, Plaintiffs state that despite the coordination of a wiretap from November 2004 to August 2005, the Defendants executed the warrant at the wrong location.  Second, Plaintiffs allege that it was unreasonable for the police officers to execute the warrant without first conducting surveillance on the property or viewing the warrant, and that had Defendants done so, the description on the warrant was such that they would not have executed the warrant on the wrong premises.  Finally, Plaintiffs maintain that Defendants failed to comply with the search of the warrant as ordered, as it required Defendants to provide a copy of the warrant to any party from whom any property described in the warrant was seized.

Plaintiffs' claims regarding the reasonableness of the mistake at hand do not support the conclusion that the State Police Officer Defendants acted unreasonably.  It is undisputed that it was

14

the federal agents who had been conducting the surveillance of the property in question, and that the State Defendants were only enlisted to help execute the warrant on the day of the incident in question. It is also undisputed that Defendants were directed to the location where the warrant was to be executed by the Federal Agents, and were informed by the Federal Agents who indicated that Plaintiffs' home was the location to be searched. Finally, although Plaintiffs point out that one of the enumerated duties of the T.E.A.M.S. Unit was to execute search warrants, it is undisputed that on the particular occasion in question, the Unit was performing the specific task of executing the entry at the location so that the Federal Agents could execute the search. It is therefore reasonable that none of the State Defendants would have had the warrant in their possession, as it was not the State Officers who were to execute the search and any seizure that would have required the distribution of the warrant. It was not unreasonable for the officers to rely on the representations of the federal agents regarding the details of the execution of the search they were directing.

Plaintiffs also challenge the entire execution of the search on the wrong location, contending that the search itself was in violation of their Fourth and Fourteenth Amendment rights. Plaintiffs maintain that the search that was executed upon their residence without a warrant and without probable cause, and was therefore a violation of their Fourth Amendment rights. Plaintiffs argue that the execution of the warrant on the wrong home was clearly unreasonable and that it was unreasonable for the Defendant Police Officers to execute the warrant without first viewing it. Had the Officers done so, they would have known that they were about to execute the search on the wrong residence. While Plaintiffs are correct in their assertion that a search executed without a warrant and without probable cause is presumptively unreasonable, see Payton v. New York, 445 U.S. 573, 586 (1980), in light of the foregoing discussion, this Court finds that Defendants did not

15

commit an unreasonable error in the execution of the warrant.  Defendants were operating under the belief that they were carrying out a duly authorized warrant which was supported with probable cause.  Accordingly, Defendants will be entitled to qualified immunity regarding Plaintiffs' claims of unreasonable search and seizure.

Next, this Court must address the claims brought by those individuals who were not present in the apartment at the time the search was executed.  First, Plaintiffs maintain that the individuals in the first floor apartments were unconstitutionally restrained when the officers secured them in their homes during the execution of the warrant.  In light of the aforementioned discussion regarding reasonable restraints in the execution of a search warrant, this Court similarly finds that the extent to which the individuals in the building were restrained was necessary under the circumstances.  In order to effectuate a prompt and efficient execution of the search, it was reasonable for the police officers to temporarily restrain the occupants within their homes.  The Plaintiffs were free to move within their homes and were only restrained for the alleged twenty to thirty minutes that were required for the execution of the warrant.  Such restraint was within reason and was certainly not so unreasonable as to overcome Defendant's entitlement to qualified immunity.

Plaintiffs Aneze Jean-Louis and Cedelie Pompee also advance loss of consortium claims pursuant to § 1983.  Plaintiffs premise their claims on the loss of companionship and society of members of their family as a result of the emotional trauma that this incident has occasioned upon them.  Plaintiffs maintain that such society and companionship are liberty interests that are protected by the Fourteenth Amendment.  Although the Third Circuit has not spoken definitively on whether loss of consortium damages are available to a spouse under § 1983, Courts in this District of New Jersey have previously declined to find a cause of action for loss of consortium under § 1983, see

Laute v. City of Gloucester, 2012 U.S. Dist. LEXIS 9454, at *11-12 (D.N.J. Jan. 25, 2012 )(finding the reasoning of the circuit courts who have declined to find a cause of action for loss of consortium persuasive); see also L.S. v. Mount Olive Bd. of Educ., 765 F.Supp.2d 648, 656 n. 2 (D.N.J. 2011); Gutin v. Wash. Twp. Bd. of Educ., 467 F.Supp.2d 414, 430 (D.N.J. 2006).  This Court does not find occasion to find such a claim under the facts of this case.  While Plaintiffs cite to authority in other Circuits who have found a loss of consortium claim in narrow circumstances, the facts of those disputes are not sufficiently comparable to the facts and claims of the instant dispute. Therefore, they do not merit consideration here.  Plaintiffs' loss of consortium claims fail to state a legally cognizable claim under § 1983 and must be dismissed.

**IV.    CONCLUSION**

While it is certainly unfortunate that the incident in question occurred and that the lives and well-being of the Plaintiffs were disrupted as a result, the circumstances of this case are such that prohibit this Court from allowing this suit to proceed beyond summary judgment.  For the reasons stated, it is the finding of this Court that Defendants' motion for Summary Judgment is **granted**. An appropriate Order accompanies this Opinion.

S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:       January  31 , 2012
Orig.:      Clerk
cc:         Hon. Joseph A. Dickson, U.S.M.J.
            All Counsel of Record
            File

17